Good morning. May it please the Court, Christopher Lye for Appellants Krantz et al. I'd like to reserve two minutes for rebuttal, if possible. The primary issue in this appeal, and I say primary because the second and third issues in this appeal, the offset and common fund calculation, the prevailing party issues, are contingent on this primary issue of whether the District Court properly allowed a set-off of $65,000 in settlement funds from the UIM verdict to reach a trial in this case. Well, they're not contingent. The second one's dependent but not contingent, right? Correct, Your Honor. And Appellant's position is that the set-off issue turns on an interpretation of the UIM policy at issue in this case is interpreted through Washington law. Both of these statutory interpretation and contract insurance policy interpretation being issues the Court reviews de novo. And the policy provision that's key in this case is the UIM set-off reimbursement provision, which provides that Allstate was entitled to set off any sums paid by anyone, by an underinsured motorist or anyone else responsible. And so as to this case, isn't Mr. Wenner, I think that's what the person who the policy, the bulk of the settlement came from. Correct, Your Honor. Isn't he someone else responsible for the injuries to Mr. Krantz? Well, Your Honor, the policy doesn't define responsible with the law. No, I'm not asking about a policy definition. I'm just asking as a matter of common sense, isn't he someone responsible for the injuries? He gave alcohol to the driver who caused the accident. Well, under Washington law, involving set-offs in the UIM context, I'd have to answer no, Your Honor, because the leading cases, such as Deshbott and Beckham, seem to require some sort of adjudication or finding of liability, i.e. So your argument then is because there was a settlement here, the $65,000 doesn't count, but if there had been a jury verdict to this effect, it would? Partially, Your Honor. Our full argument is that because there was a settlement and because the policy provision question requires someone to be responsible, which we would define as legally responsible, that the set-off wasn't paid. Right. So that was the question I was asking. So if there had been a jury trial or a court trial or an arbitration that said, Mr. Wenner, you owe $250,000 or whatever your policy limits are on this, and the driver's limits were whatever they were, and then allocated the money the way it got allocated, you would not be here? Correct, Your Honor. So the critical fact in your view is the absence of an adjudication of responsibility? Yes, Your Honor. And it wouldn't necessarily even need to be an adjudication. It could have been a stipulation between the parties. It could have been an admission by all state in the UIM trial that Wenner was also liable for the damages that were issued. All state did admit liability, negligence, proximate causation as to Adam Pena and framed the trial as a trial solely for damages. Well, help me understand. So I understand what Judge Hurwitz said as a bright line. There would have to be some sort of judicial adjudication of Wenner's legal liability. But you're saying that's not your position, and in fact, there's no support for that. So you wanted something less. And so what is the something less, and what's the reason that that less has to be found? Well, the something less would be essentially a judicially bonding finding of liability, and that could come in the form of stipulation between the parties. So Wenner would have to stipulate as to his legal responsibility. Is that what you're saying? That is one option. I'll say also stepping into the shoes of the tort fees and the UIM trial, they could have admitted to Wenner's liability because liability is a predicate for any UIM benefits to be paid under the policy. It's hard for me to understand what the policy behind that sort of conclusion could possibly be because a jury found that the total amount of damage was, I now forget what it was, $81,000 and change. And your position is, well, that may be what a jury actually found was our total damage, but nevertheless, we get lots more than that. I don't understand how that is consistent with either the policy or the statute. Well, Your Honor, our response would be twofold. One, the $81,708.32 found by the jury in this case was only with respect to damages caused by Adam Pena. Wenner, his actions, any damages caused by him were not part of the UIM trial. Did you have any damages? Weren't all the damages you suffered caused by Adam Pena? In other words, by the two tort fees together, there wasn't a separate set of damages that were caused by Mr. Wenner, were there? Well, we would say that there's been no finding of loan- Well, no, that's not what I'm asking. I mean, I'm looking at this through the lens of reality. Your client was in a bad automobile accident. He sued, and somebody found that his damages from that accident were $81,000. The accident was the fault of both Mr. Pena and Mr. Wenner, but you didn't suffer damages over and above the $81,000, did you, your client?  Okay, so when you get back to Judge Graber's question, essentially what you're saying is even though we recovered all of our damages under Washington law, we think we get another $65,000, right? And our position, this is- Is that correct, what Judge Hurwitz just said? Correct, Your Honor. And our position is that that is consistent with the Washington Supreme Court's decision in Vatican where there were two individuals, Kandrell and Kim. Kim slams into the back ends. Actually, they both slam into the back ends. It preceded the UIM arbitration. Kandrell was found 50% liable. Kim was found 50% liable. The injured party didn't get the full amount. I mean, that was the difference there. Well, in Vatican, the arbitrator found that there were $60,000 worth of damages caused to the back ends in the collision. Subsequently, Kandrell settled with the back ends for $54,000. And in examining whether either the policy limits of Kandrell or the settlement payment by Kandrell could be set off against Kim's $30,000 worth of damages, the Supreme Court looked at the policy provision at issue in that case, which is materially identical. Is it materially identical? Not quite. I think it's materially different, isn't it? What did the policy provision say in Vatican? In Vatican, it said that... I can't pronounce it correctly. It said that all state could set off sums paid by or for anyone legally responsible. And the Supreme Court reasoned that Kandrell's payment, his settlement payment, was not by or for Kim. It was solely for Kandrell. And we would argue that it's analogous... In the all-state policy, it just says amounts paid by the owner-operator or anyone else responsible. So the crucial language, by or for, is not there. And we would respond that the policy language at issue in Vatican used the term legally responsible, and that is the... And that seems to be your position in this case, right? Correct. That even though this policy doesn't say legally responsible, it should be read as saying that. Correct, Your Honor. The policy in Vatican said, which the insured is legally entitled to recover from the owner-operator of an underinsured motor vehicle, which also is not in your policy, correct? Correct, Your Honor. And then said, and so anyone, for anyone by or for anyone who is legally responsible, and the court interpreted that as meaning anyone who's legally responsible as the owner-operator. But none of that language appears in this policy. This policy doesn't have the expression legally responsible. It just says anyone else responsible and doesn't refer to the owner-operator of an underinsured motor vehicle. Well, if the court finds that the policy provisions are not sufficiently analogous, we believe that Vatican stands for the result that $60,000 in total damages were found, $54,000 was paid by Kandrell, and yet the Washington Supreme Court said that the set off toward Kim's $30,000 was not permissible under the policy language. They said that they were... But that was just a pure contract interpretation. Is that right? Correct, Your Honor. Yeah. And we have a different contract here. So I guess I don't see how that helps. There was no concern of a windfall or a double recovery in Vatican. It was simply they were applying the contract as written and accepted. So Vatican, in your position, your position, as you admitted before, if you prevail, your client will recover more than his damages, correct? Correct. In Vatican, it just did not result in the plaintiff recovering more than his damages, did it? We wouldn't submit that it did, Your Honor, because the UIM arbitration determined that there were $60,000 total in damages, $54,000 was paid by Kandrell, and then the Washington Supreme Court stated that the $54,000 could not be set off against the $30,000 of damages caused by Kim. So our reading of Vatican is that there was still $30,000 owed under the UIM policy. See, as I read it, I thought the... And maybe I'm wrong. I thought the arbitration established the damages that are attributable to one person but not the other. But let me put that aside. The Washington courts have said that the purpose of the UIM policy is to make somebody whole but not in a better position than if he had been struck by an insured motorist. You're really arguing for a result contrary to that, aren't you? Well, we're simply arguing, applying the contract as written and as drafted. If there's any ambiguity as to the term responsible, it should be construed against all states and in favor by appellant. And the contract at issue in this case does use responsible in one other provision, and only one, is the PIP reimbursement provision. It states legally responsible. So the contract itself supports interpreting... Well, doesn't that support the opposite result? If it says legally responsible in one place and leaves out the word legally in the other, shouldn't we give effect to that distinction? Well, we would submit that it doesn't because responsible is undefined, and all states have offered another interpretation of the term responsible. All we have to go on is the plain language of the contract. And the only other instance where responsible is used, and it's used in a similar context, is legally responsible. So reading the contract as a whole, responsible should be interpreted as legally responsible. So you're asking us to add a word where it was omitted. We're asking the court if it finds an ambiguity to construe it, and we would submit that it's not ambiguous because against the backdrop of Washington law concerning UIM set-offs, which have to be read into insurance policies, some sort of adjudication or finding of legal liability is required. So responsible has to be interpreted against that backdrop. And we would submit that it's unambiguous in that respect. But even if it's not, if it is ambiguous, the court should look to the policy as a whole and Washington law and construe it as legally responsible. But can I go back to Batacan for a second, because I'm still not sure of your position on it. So I understood Batacan, the arbitration came up with an award of how much, $54,000? $60,000. $60,000. And the one policy provided for $54,000, right? One policy had limits of $300,000. Right. No, but I mean, one party paid $54,000. Correct, Your Honor. And the insurer wanted to set off against that $54,000 $30,000 of coverage? Correct, Your Honor. And that would have meant that the plaintiff would have only recovered $24,000, correct? Correct. And so all that that did was per — that was a case in which the Court said we're not going to do that because that would — that would mean that the plaintiff would recover less than the damages awarded by the arbitrator. So I don't see how in that case there was a double recovery. We would submit that ultimately the Court applied the contract as written, which is — and in this case, doing so would not result in an unfair result, I'll say, because, one, they wrote the contract and drafted it. Two, there's only a determination of damages caused by Adam Pena, a legal determination, through all states' affirmative acts. It was all state admitting only Adam Pena's liability for the — I thought the jury instructions was not to focus on liability, but only on the amount of damages. Correct, Your Honor, but only because of the admission of liability that was made before a trial, because it — So the jury actually found these are the total amount of KK's damages, and that's what the 81 and change is. Jury instruction 10 provides that the jury was determining damages caused by Adam Pena's negligence. It repeated in three instances in the same instruction. But didn't the jury instructions also say they were not to look at liability or consider liability? They were not finding liability. That's correct, Your Honor, and as the amount of time — Yes, but we'll give you a minute for rebuttal since we asked a lot of  Thank you, Your Honor. Good morning. Irene Hecht, Your Honors. I represent the respondent and underinsured motorist insurer in this insurance company. I also would like to focus my comments on the primary issue, that is, the issue of whether Allstate, as an underinsured motorist insurer, is entitled to set off the $65,000 KK already received from a global settlement of his liability lawsuit against all of the tortfeasors against the jury's award in this underinsured motorist trial that determined the total amount of KK's damages as a result of that accident. And in resolving that issue, I think it's important to remember that the global settlement that paid KK $65,000 for his injuries and damages as a result of the accident was one indivisible settlement. In other words, all of the tortfeasors put their entire liability limits into one pot, and from that one pot, they settled all the claims of all of the injured parties in that accident. And in doing so, they exhausted all of the liability insurance that was available for all of the tortfeasors. So Adam Penna, the underaged, intoxicated driver, and his parents had a $25,000 per person, $50,000 per accident auto liability insurance policy. Dean Winner, the individual, the adult who supplied the alcohol to Adam Penna, had a $100,000 per person, $300,000 per occurrence, homeowner's liability policy. So they took that total, $350,000, and put it all in one pot. And it was from that total pot that KK received $65,000. So it's important to remember, too, that the UIM jury trial was specifically held to address and resolve the question of the total value of KK's injuries and damages as a result of that August 20, 2008 accident. Your colleague says it was only held to resolve how much of those damages were KK's injuries and damages from the accident, and what's your response to that? That is simply not accurate, Your Honor. As Judge Layton noted in his decision, liability was not an issue in this case. The case from the beginning was a case that was to resolve the dispute about the value of KK's injuries and damages from the accident. And we know that from the complaint, because the complaint itself makes specific reference to the $65,000 allocation from the global settlement reached with the Penas and Wenner. And in the complaint, the plaintiff, or KK, argued that the allocation and net distribution that KK received from that global settlement was significantly below the value of the damages he suffered. And it goes on to say, taking into account the amount KK received in the settlement, KK has not been made whole. And so he was seeking underinsured motorist benefits to make him whole for his injuries and damages. Also, in the trial brief that was filed by KK, they flat out said to the court, this straightforward trial will ask the jury to determine the amount of damages that KK suffered as a result of this collision. That was the issue at trial. What were his total damages as a result of the accident? Roberts. I take it there was no evidence that there's no contention in this case that KK suffered damages from Mr. Wenner's actions separate from the collision. No. There's only one mechanism of injury here. It's the automobile accident when Adam Penna crossed the center line and struck the Krantz vehicle that KK was riding in as a passenger. So there's no evidence that could have been presented to the jury regarding Wenner's negligence that would properly have been relevant or impacted the jury's decision on the amount of damages that KK suffered as a result of the accident. So, you know, our position is that there's simply nothing in either Washington's underinsured motorist statute or the policy that suggests or supports appellant's position that a UIM carrier is not entitled to a set-off for the liability insurance proceeds paid to the injured party, the UIM insured, for his injuries and damages as a result of the accident. I mean, what happened here is entirely consistent with the purpose and intent of the underinsured motorist statute. The very purpose of the statute is to provide a secondary or floating layer of coverage above the primary coverage, which is the liability insurance, to ensure that an injured individual recovers the total amount of his damages up to the underinsured motorist limits. What the court, the Washington court has consistently recognized is that the whole purpose of UIM coverage is to take up where the liability carrier's, you know, coverage leaves off, thus avoiding any sort of an uninsured gap. And that's precisely what should happen here. Can I ask you a question about one of the secondary issues in this case? I don't want to prevent you from finishing your argument on the major points. So if this is a good time, fine. Otherwise, I'll ask it later. Sotomayor, it's the question of the attorney's fee award. And I've been looking at the Washington Supreme Court's decision in Safeco Insurance Company v. Woodley, which seems to involve an identical situation to this one. And what it says, as I read it, is, and first of all, everybody agrees the pro rata share is 12 percent in this case. Nobody's fighting about that. The question is what that's applied against. And as I read the Washington Supreme Court's decision, I think it seems to pretty clearly say that what you do is you take both the recovery in the UIM suit of $81,000 and you take the recovery of $65,000 in the previous settlement, you put them together, and that's what you apply the 12 percent against. And that's not what the judge did here. I'm not sure it's not a matter of great monetary consequence. I think the calculations probably get your opponents a few more thousand dollars. But doesn't Woodley control the way that this should be done? I don't think so. I think the case that actually controls is the Winters case. But tell me why Woodley is distinct. Woodley is a Supreme Court case that seems to involve indistinguishable circumstances. How do you distinguish it? The — can I just grab my copy of the case? Absolutely. Thank you. And as I said, it's not a lot of money, but since you're here. The — so the way that the Washington court has approached this issue of offsets — and we're talking here about the PIP offset, right, or set-off. Right. And that Woodley involved a PIP offset. Woodley said that when you want the PIP offset, which you did want in this case, you wanted a $10,000 PIP offset. Correct. That the way that the attorney — the way the common fund is calculated is by adding the recovery in this — in the UIM case, and the judge did that here. He took the recovery in the UIM case. But you also add to that the recovery in the previous — any other recovery of $65,000, and that's the number against which you apply the 12 percent. The judge didn't put the $65,000 in here. Not only does Woodley say you should do that, but — and this is a long question — but it strikes me as a matter of equity, since they actually produced that fund that you got the benefit of, they ought to get reimbursed for their fees in that case. Well, I think the — what Woodley says is that, ultimately, and I'm looking at the decision, it says without the offset, Woodley's recovery would exceed her total damages as determined by the UIM arbitration. Nothing in the UIM arbitration entitles the insured to receive more than the total damages resulting from the collision. And the reason I make that point is that I think that when you take the $65,000 that — Now, add the fees to the total recovery here. He would not have recovered more than he — I thought the fees were calculated as a third of the total pot that was awarded. Exactly. And so it would be 12 percent of the total pot of the $81,000, which were 20-something. And isn't that what was awarded as fees? Correct. Correct. So are we really talking about costs? Why wouldn't he be entitled — why would Allstate not have to pay for the additional costs that were incurred at the settlement? I think it was like some $5,000 of costs. Well, the — we believe that what's awarded is statutory costs. And there were only statutory costs incurred in the — But is there a case that says that or any statute that says that? So the one case that we cited — Doesn't Woodley say legal expenses? Pardon? Woodley says legal expenses, doesn't it? Well, the — the Woodley case doesn't address how you calculate the costs. No, it says, but you're entitled to recover a pro rata share of the legal — put aside a second what the denominator is, or the multiplicand, I'm sorry. It says legal expenses. Where in Washington law does it say legal expenses are restricted to statutory costs? No. I think that's the question Judge Acuda asked. Oh. Well, my — there is one case that we cited in our materials that talked about when you're determining attorneys' fees and costs for purposes of a common fund calculation that it's — it depends on — it's based on statutory costs. So if I produced a common fund for a settlement and spent a lot of money to do it, you're saying because I incurred no statutory costs in doing it that I wouldn't be able to recover those expenses in producing the common fund? Well, not as — not as costs. You're — you would be entitled to fees. Would you be entitled to recover those expenses? Let's assume there is expenses necessarily incurred in producing the common fund, but they didn't qualify as statutory costs and they weren't attorneys' fees. Your view is that you get the benefit of the fund that was produced, but you don't have to reimburse the party for its costs? We have to reimburse them for our pro rata share of the attorneys' fees incurred, and we believe the statutory costs incurred. I mean, I understand. So your position is you do not have to reimburse the party that produced the common fund for any other expense that went to producing the common fund? Other than pro rata share of attorneys' fees and statutory costs. But let me ask this a different way. The district court in its order said — I'm sort of confused about what the plaintiffs are asking for by way of costs, and I'll give them what they asked for in their last write-up, which was like the $7,000. But they had previously moved for $5,000 for the — I guess those were the costs associated with the settlement. So did the district court err in relying on the last submission by the plaintiffs? Was that a recognition or was that an implicit holding that only the costs associated with the litigation would be recoverable, pro rata share would be recoverable? I don't know what the court's reasoning was precisely. I do agree with you that the court made comment that there was some confusion about what the costs were. But there is — and I found the citation to the Washington case. It's Williams v. Banks of California — or Bank of California, pardon me. It's at page 43 of our brief — that where the court in that case — you know, in one little short paragraph says that when you're calculating costs for purposes of a common fund award or an award based on having created a common fund, you look to what the statutory costs are and award that. Can I go back to attorneys' fees for a second? We all agree, I take it in this case, that the attorneys' fees attributable to producing both funds, the UIM fund and the earlier $65,000 settlement, are one-third of the total? Correct. Okay. And will you disagree with the other side, is that when the judge is calculating the attorneys' fees that should be awardable in this case, you think the 12 percent number is applicable only to one-third of the $81,000, the UIM recovery, and not to the generation of the $65,000? No. I think that where I disagree with your analysis is that — Forget what mistakes I've made. Tell me what number, what total sum the judge should determine the attorneys' fees against. It's one-third of the $65,000 and one-third of the difference between $65,000 and $81,000 in change that was awarded as the UIM damages. Because the UIM, the amount that all state owes, the UIM benefits, is the total damages award reduced by the liability recovery. So the $81,000, if I understand this, of the total damages, is the total amount of the fund that was created. Correct. $65,000 from the settlement and the whatever under $20,000 from the litigation. And so the attorneys' fees under Washington law would be one-third of that, or that the court was within its discretion to say the attorneys' — total attorneys' fees for the common fund is one-third of that, and then all state had 12 percent of that one-third. Correct. Is that your analysis? Yes, that's absolutely correct. And it is — in your view, that's consistent with Woodley? And with Winters. Well, just is it consistent with Woodley? Yes. Because I think in Woodley the court did not do that. That's why I'm asking. The court seemed to say, I take the entirety of the UIM award and add it in. Because you sought to recover the $10,000 PIP, I take the entirety of the UIM award, add it to the entirety of the previous recovery, and then apply the attorneys' fees against that. I mean, I — Woodley said that quite clearly, so I'm trying to figure out why you think it's distinguishable. Well, I guess what I would say is that the Winters case is more recent than Woodley, and it specifically addresses this concept of a PIP offset in the context of an underinsured motorist award, where there's part of the common fund comes from the underinsured motorist coverage recovery. And specifically says the underinsured motorist portion of the recovery is the difference between the total damages and reduced by the liability payment that had been recovered. Winters is a 2001 case? Yeah. Woodley is a 2004 case. So Winters doesn't come after Woodley? Is that correct? Well, I apologize. The copy of Woodley I'm looking at is a 2000 case. Maybe I have the wrong number. That's why I was asking. Yeah. Thank you, counsel. We'll straighten out the years. And you have a minute for rebuttal. Briefly, Your Honors, on the first point, I would agree with Judge Hurwitz's characterization of Woodley, the common fund for purposes of offset should be calculated as the total recovery of the A1000 plus the 65,000. I also wanted to clarify some statements I believe also made in response to Judge Hurwitz regarding whether the 81,000 recovered. I thought only that was just the judgment of the jury was that he had suffered 81,000 damages and all they got was the offset, the sum under 20,000. Correct, Your Honor. So the total amount is the 65,000 from the settlement and the 20,000 from the litigation, you know, under 20,000. Isn't that correct? We would agree that Woodley requires the total. Does the jury only determine what the total amount of damages was or the total, the value of the injury to KK? It didn't recover any additional dollars other than the 18-some dollars, 18,000. Correct, Your Honor. Yeah, that's what I thought. Okay. Thank you. And one last point, if I may finish. I'd like to clarify a statement I made as to whether damages by Dave Winner were encompassed by the UIM vert in this case. Winner was completely excluded from this proceeding. It was through all states' initial liability as to Adam Pena only, and that allowed a motion in limine to exclude any evidence of Winner providing alcohol, intoxication. But I guess I'm still back to the question I asked you before. Your client's only injuries came from this automobile accident, correct? Correct, Your Honor. For which Mr. Pena was responsible. Correct. There weren't any separate injuries that came from Mr. Winner. The injuries were indivisible, if you will. We would respond that Winner and his actions were not included in this calculation. That wasn't what I asked. What I asked was whether or not your client has any damages other than the damages caused by the collision. Correct, Your Honor. Thank you, counsel. Thank you. The case just argued is submitted, and we appreciate the helpful arguments from both counsel.
judges: Graber, Ikuta, Hurwitz